CHARLES KROWKA *v.* COLT PATENT FIRE ARM MFG. COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued June 9—decided July 21, 1939.

*Lucius F. Robinson, Jr.,* with whom was *James M. Carlisle,* for the appellant (defendant).

*Morton Cole,* with whom, on the brief, were *Cyril Cole, A. W. Firestone* and *John Henry Sheehan,* for the appellee (plaintiff).

BROWN, J.  The defendant's factory buildings extend along the easterly side of Huyshope Avenue in Hartford both northerly and southerly from the intersection of Sequassen Street.  On April 26, 1935, a strike of the defendant's employees had been in effect for several weeks.  At the outbreak of the strike the chief of the Hartford police department detailed policemen to the vicinity to preserve order.  Deeming the protection inadequate the defendant requested that additional men be detailed and assigned to the gates, boiler house and other designated places.  Supernumerary policemen were furnished pursuant to this request upon the defendant's agreement to pay their wages, which it

did through the police department. James Newcomb, Jr., employed as a supervisor in the defendant's plant, was during the strike also employed by the defendant to transport employees who continued at work, from their homes to the plant, which was being picketed, and back again, and also employees living in the plant upon various errands after working hours. The defendant provided him with a car which he used for the purpose. At about 9 p.m. on April 26th inside the Sequassen Street gate of the defendant's plant east of the intersection, three of these supernumerary officers requested Newcomb to drive them by a round-about course to the southwest corner of the two streets, in an effort to surprise and arrest persons alleged to have caused trouble for employees of the defendant. Newcomb transported them as requested and upon their arrival the eighteen-year-old plaintiff was standing on the corner. As the officers jumped out of the car and started toward him, the plaintiff ran south on Huyshope Avenue, darted between two houses, and in the dark ran against a fence and broke his leg. Overtaking him the officers placed him under arrest, and took him to the hospital in the car driven by Newcomb. These facts were undisputed. The plaintiff claimed further that the defendant had provided Newcomb with the car to engage in counter strike activities and that his acts at the time in question were within the scope of his employment, as were also those of the supernumeraries who were likewise the defendant's servants; that he brought the car to a sudden stop at the corner within five feet of the plaintiff as he stood there; that all four men jumped out cursing and threatening the plaintiff and approached him brandishing night sticks; and that he was frightened and ran, whereupon they followed in hot pursuit.

The court instructed the jury that liability of the

defendant could be predicated upon an unlawful act or assault committed, either by the supernumeraries provided they found them to have been servants of the defendant acting within the scope of their employment at the time, or by Newcomb provided they found him to have been the defendant's servant then acting within the scope of his employment. The defendant does not complain of the court's charge relating to the defendant's liability upon the latter ground. It does, however, assign as error the court's refusal to charge that the defendant was not liable for the acts of the supernumeraries because they acted under orders of the Hartford police department, and also its instructions given that it was for the jury to determine whether the supernumeraries were servants of the defendant. Although the defendant made no request that the jury be required to state upon whose acts their verdict was predicated, assault by its agents being the only possible basis of the defendant's liability, this case is not one where the plaintiff was relying upon grounds of action which were distinct in the essential basis of the right involved, but rather only in the specific sets of facts related thereto which formed a part of the transaction. The general verdict for the plaintiff therefore does not obviate error in the charge relating to the defendant's liability for acts by the supernumeraries as its agents. *Ziman* v. *Whitley*, 110 Conn. 108, 115, 147 Atl. 370. The first question to be determined, therefore, is whether the court did err in charging as to the defendant's liability for the acts of the supernumeraries.

The defendant is entitled to a correction of one vital paragraph of the finding pertaining to this issue. This sets forth a conclusion, predicated upon acts of the defendant and the attendant circumstances which the plaintiff offered evidence to prove and claimed to have proved, stating that the supernumeraries were

employed by the defendant and were acting within the scope of their employment at the time the plaintiff was assaulted. These acts and circumstances claimed proven by the plaintiff as shown by the finding are insufficient to sustain this conclusion and it must therefore be stricken out. As corrected, the finding shows that all that the plaintiff claimed to have proven upon this issue, in addition to the facts included among those already referred to as undisputed, are the following: the protection requested of the police department by the defendant was for its employees remaining at work and for its plant and property; at or about 9 o'clock in the evening, the picketing having ceased for the day, it was not necessary to have any regular policemen on duty on the streets adjoining the plant other than the one or two patrolmen ordinarily assigned; during the strike the defendant ordered the operator of the restaurant on its premises to feed at its expense the supernumerary policemen who were there in uniform and this was done, the three officers charged with the assault on the plaintiff being among the number; the defendant directed counter strike activities from the Scale house at its Sequassen Street entrance and the supernumeraries reported there to their captain who was allowed to use space therein while on duty up to 6.30 p.m.; the three supernumeraries in approaching the plaintiff proceeded without any legally issued warrant and were not acting on speedy information of any offense committed; as they alighted from the car, they addressed profane and threatening language to the plaintiff and threatened him with their night sticks; he was frightened and ran and they followed in hot pursuit; and the plaintiff neither on that night nor at any time had participated in any violation of the law.

The defendant offered evidence to prove and claimed to have proved these further facts: the operation of

the picket lines caused substantial disturbance to the peace, endangered the property of the defendant and of others in the vicinity, and engendered well founded fears of riot and bloodshed; the supernumeraries detailed by the chief of the Hartford police department to strike duty, reported daily at 4 p.m. to the captain or lieutenant who had been originally assigned there with other police officers, wherever he happened to be at the time; they were posted by him and instructed to cover certain territory for the purpose of maintaining order therein, and at all times were subject solely to the orders of the officers of the Hartford police department; among these supernumeraries were the three charged with assaulting the plaintiff who were assigned to beats on Huyshope Avenue, Charter Oak Avenue and Sequassen Street; at no time during the strike did the defendant exercise any control over any of the regular police officers or supernumeraries, or give any orders of any nature to any of them; some of its suggestions to the police as to means of preserving order like some made by the strikers were adopted and others not, the police endeavoring to perform their duties in an impartial manner; shortly after the strike commenced a gang of boys including the plaintiff gathered almost nightly after dark on the southwest corner of Sequassen Street and Huyshope Avenue, called the officers patroling their beats and the defendant's employees entering and leaving the plant names, at times threw missiles at them, and in general created a disturbance against the peace; the supernumeraries repeatedly warned them and ordered them to disperse, with but temporary effect; shortly before April 26, 1935, Sergeant Brown, the regular police officer in command of the night shift including the supernumeraries, instructed them to break up this gang, and if necessary to arrest one or more of them; prior to 9 p.m. on that

night the gang had collected on the corner, called a night watchman of the defendant names and threw a brick at him, which he reported to Supernumerary O'Leary patroling Huyshope Avenue; he immediately joined the other two supernumeraries and they commandeered Newcomb's automobile in which he drove them to the corner; Newcomb had no authority from or duty toward the defendant to transport any police officers, except such as any citizen would have when ordered to by the police; and he received no additional compensation for his services in doing so on this occasion.

The finding in a case tried to the jury is a narrative of the facts claimed to have been proved on either side, made for the purpose of fairly presenting any claimed errors in the charge or rulings of the court. *Brown* v. *Goodwin,* 110 Conn. 217, 218, 147 Atl. 673; *Fierberg* v. *Whitcomb,* 119 Conn. 390, 392, 177 Atl. 135. The validity of the charge must be tested by the finding and by that alone. *Tuckel* v. *Hartford,* 118 Conn. 334, 336, 172 Atl. 222; *Fitzgerald* v. *Savin,* 119 Conn. 63, 66, 174 Atl. 177; *Piascik* v. *Railway Express Agency, Inc.,* 119 Conn. 277, 279, 175 Atl. 919. Testing the charge as to the defendant's liability for the supernumeraries' acts in the light of these principles, it appears from the finding as corrected that the facts upon which the plaintiff on this record can rely as going farthest to establish an agency relationship, were limited to a request of the police department by the defendant for additional police protection, the department's response by furnishing the supernumeraries, whose wages were paid by the defendant through the department and whose meals while on duty were paid for by it. The gist of the defendant's claims of proof, not contradicted by those of the plaintiff, is that during this time of threatened breach of the peace and

injury to persons and property, these supernumeraries were on duty on the public streets, subject solely to orders by the police department and in no respect under the control of the defendant. Upon the claims of proof of the two parties confined within these limits, it could not reasonably be found that the police officers were the servants of the defendant in the sense of the master and servant rule, since there is no claim that the right essential thereto to direct as to what should be done by the supernumeraries and how and when it should be done, that is, the right of general control, existed in the defendant. *Francis* v. *Franklin Cafeteria, Inc.*, 123 Conn. 320, 324, 195 Atl. 198; *Thompson* v. *Twiss,* 90 Conn. 444, 447, 97 Atl. 328.

The general rule in such a case is that a private person or corporation is not responsible for the acts of a special police officer, appointed by public authority, but employed and paid by the private person or corporation, when the acts complained of are performed in carrying out his duty as a public officer. Notes, 35 A. L. R. 681, 77 A. L. R. 933; 39 C. J. 1273, § 1461; *Hershey* v. *O'Neill,* 36 Fed. 168, 171; *Pennsylvania R. Co.* v. *Kelly,* 177 Fed. 189; *Healey* v. *Lothrop,* 171 Mass. 263, 50 N. E. 540; *Zygmuntowicz* v. *American Steel & Wire Co.,* 240 Mass. 421, 424, 134 N. E. 385; *Norfolk & Western Ry. Co.* v. *Haun,* 167 Va. 157, 165, 187 S. E. 481; *Thompson* v. *Norfolk & Western Ry. Co.,* 116 W. Va. 705, 709, 182 S. E. 880; *Ruffner* v. *Jamison Coal & Coke Co.,* 247 Pa. St. 34, 92 Atl. 1075; *Fagan* v. *Pittsburgh Terminal Coal Corp.,* 299 Pa. St. 109, 113, 149 Atl. 159. Other cases supporting the rule which well illustrate the significance of instigation or express orders by the defendant with relation to its liability are: *Macknowski* v. *Hudson & M. R. Co.,* 14 N. J. Misc. 778, 187 Atl. 747; *Goldberg* v. *Central Railroad Co.,* 97 N. J. L. 374, 117 Atl. 479, 480; *New York,*

*Chicago & St. Louis R. Co.* v. *Fieback,* 87 Ohio St. 254, 264, 100 N. E. 889, 43 L. R. A. (N. S.) 1164, note. Whether the officer was acting within the scope of his employment as the defendant's servant or in his capacity as a public officer, may present a question for the jury, as in *Rice* v. *Harrington,* 38 R. I. 47, 94 Atl. 736, and *Zygmuntowicz* v. *American Steel & Wire Co.,* supra. Where upon the record as in this case, however, a conclusion that the police officers are acting as the servants of the defendant cannot be reasonably supported, it becomes a question of law for the court. *Norfolk & Western Ry. Co.* v. *Haun,* supra, at 187 S. E. 485; *Thompson* v. *Norfolk & Western Ry. Co.,* supra. The court's charge upon this issue constituted reversible error. Since this requires a new trial it is unnecessary to discuss further claimed errors in the charge involving questions not likely to arise therein.

The plaintiff maintained that at the time of the alleged assault he was an innocent bystander. The defendant offered in evidence a certified copy of a police court record to prove that the plaintiff was arrested on that night, charged with breach of the peace and loitering, pleaded nolo contendere, and was convicted on the former charge. It was claimed to affect the plaintiff's credibility, as an admission of guilt, as evidence of an arrest, and as res adjudicata establishing that the plaintiff at the time in question was engaged in a criminal act. The exclusion of this evidence is assigned as error. It was not admissible to affect the plaintiff's credibility. *Drazen* v. *New Haven Taxicab Co.,* 95 Conn. 500, 508, 111 Atl. 861. The plea of nolo contendere was not admissible as an admission by the plaintiff. *State* v. *LaRose,* 71 N. H. 435, 52 Atl. 943; *Honaker* v. *Howe,* 19 Gratt. (Va.) 50. The fact of the arrest being not only undisputed but expressly admitted by counsel for the plaintiff, the court's exclusion

of the evidence claimed as corroborative only, particularly in view of the potential source of prejudice involved in it, was well within its discretion. The evidence was not admissible as res adjudicata. *Page* v. *Phelps,* 108 Conn. 572, 588, 143 Atl. 890; *McKenna* v. *Whipple,* 97 Conn. 695, 701, 118 Atl. 40; *Interstate Dry Goods Stores* v. *Williamson,* 91 W. Va. 156, 112 S. E. 301; Notes, 31 A. L. R. 262, 57 A. L. R. 504.

There is error and a new trial is ordered.

In this opinion the other judges concurred.